FORET, Judge.
Plaintiff, Alfred Castille, has appealed a judgment rendered in his favor awarding damages for tortious interference with his right to contract with others, totaling $335.75, against the City of Opelousas.
FACTS
Plaintiffs residence is situated outside of the City of Opelousas. The home was bought in September of 1946, at which time Southwest Louisiana Electric Membership Corporation (SLEMCO) supplied electrical power to the residence. After purchasing the home, the electrical power account was transferred to the City of Opelousas, even though the house was outside of the city limits. Plaintiffs electrical bill from the City progressively increased, and when it began to rise inordinately, plaintiff began, in September of 1975, his request to the City for a written release to enable him to secure cheaper electrical power from SLEMCO.
SLEMCO would not furnish electrical power to plaintiff’s residence without the written release from the City. Plaintiffs requests to the City spanned six years, and each request was met with either inaction or direct refusal by the city council. No reasonable explanation for the refusal to give the needed release was ever offered by the City. Eventually, plaintiff was told that in order to get the release he would have to file suit. Consequently, plaintiff filed suit for declaratory judgment and in-junctive relief. He subsequently amended his petition when the City of Opelousas sold jts power plant and facility to SLEM-CO. Plaintiff requested only damages reflecting the difference in the cost of utility services from the initial date of demand, September 1975, to September of 1980.
The trial court found that the City of Opelousas had a duty to give plaintiff a release, upon request, to permit him to secure electrical power from SLEMCO and thereby minimize his utility bill. However, the court held that because plaintiffs cause of action rested on tortious interference with contract, it was a delictual claim and governed by a one-year prescriptive period. Accordingly, the trial court ruled that all but $335.75 of plaintiff's claim had prescribed. This appeal by plaintiff ensued.
EXISTENCE OF CONTRACT OR SERVICE AGREEMENT
Castille contends that the trial court erred in concluding that no contract existed between plaintiff and the City. LSA-R.S. 33:1326 provides:
“§ 1326. Service agreements
A. (l)(a) Any parish, municipality, or political subdivision, or combination thereof, operating a gas, water, or electric light or power system, sewerage plant, or transportation system may extend such services to persons and business organizations located outside its territorial bounds, or to any other parish or municipality.
(b) Such extension shall be in accordance with the terms of service agreements entered into by the parish, municipality, or political subdivision, or combination thereof, supplying the service and the persons, business organizations, parishes, or municipalities receiving the service.
(2) No parish, municipality, or political subdivision, or combination thereof, operating an electric utility system shall sell electric power at retail outside its territorial bounds unless such power is transmitted from such electric utilities distribution system and delivered to retail customers solely through facilities owned by such parish, municipality, or political subdivision, or combination thereof.
B. (1) Nothing in this Section shall prohibit or mandate the performance by any parish, municipality, or political subdivision, or combination thereof, of any *725 agreement for the sale of electric power to persons and business organizations located outside its territorial bounds under an agreement executed prior to January 1, 1984 or any renewal of such an agreement.
(2) Nothing in this Section shall prohibit or mandate the delivery or transmission of power in furtherance of such an agreement through facilities owned by others if the request had been communicated to the electric public utility prior to January 1, 1984.”
In LeBlanc v. City of Plaquemine, 448 So.2d 699 (La.App. 1 Cir.1984), the court found that a written agreement is not required by LSA-R.S. 33:1326. In LeBlanc, supra, the court held that LSA-R.S. 33:1326 in no event requires any more than the basic requirements of a contract under Louisiana law.
The court went on to state that La. C.C. art. 1779 provides the four requirements of a valid contract: (1) competent parties, (2) their consent, (3) a certain object, and (4) a lawful purpose. All of the elements are met in this case, forming a valid contract or “service agreement” between the City and its customers. For example, in Grein v, Hawkins, 295 So.2d 219 (La.App. 3 Cir.1974), the court stated that the use of sewerage utility services, billings, and payment of bills evidenced a binding contract in that case. The request for utility service, combined with service, billing, and payment — certainly an accord reached between the City and plaintiff — is a “service agreement.”
The service agreement in question contains no agreement as to duration of term. In the absence of an express stipulation as to the term of a contract, Louisiana courts infer a reasonable term from the nature of the contract and the circumstances of the case. La.C.C. art. 2050; LeBlanc v. City of Plaquemine, supra, and cases cited therein. Among those circumstances are the manner of the parties’ execution of their obligations and pertinent usage and custom. LeBlanc v. City of Plaquemine, id.
The record reflects that plaintiff did not have any particular intention as to the duration of the service at the time he requested it. Consequently, because there was no intention, there was nothing to communicate to the City at the time service was requested. The record contains conflicting evidence as to whether or not any other case of a city customer transferring to another utility was managed without the express consent of the City. It is obvious from an economical point of view, keeping in mind the substantial investment in electric facilities, these types of service agreements are not generally terminable at the customer’s will for the purpose of obtaining the same service from another utility provider. The city-customer relationship is one of considerable value to the City.[1]
In regard to the employment of custom and usage in defining terms of agreements, La.C.C. art. 1903 provides:
“The obligation of contracts extends not only to what is expressly stipulated, but also to everything that, by law, equity or custom, is considered as incidental to the particular contract, or necessary to carry it into effect.”
Furthermore, La. C.C. art. 1953 provides that:
“Whatever is ambiguous is determined according to the usage of the country where the contract is made.”
Additionally, La.C.C. art. 1964 provides that:
“Equity, usage and law supply such incidents only as the parties may reasonably be supposed to have been silent upon from a knowledge that they would be supplied from one of these sources.”
Art. 1966 states in pertinent part that the word “usage” means that which is generally practiced in affairs of the same nature with that which forms the subject of the contract.
*726 Testimony at trial reveals that there were customary practices between utilities and their customers. William Winchester, a SLEMCO employee, testified that he had been in the utility business for many years in Louisiana and had not known of very many cases in which a customer to whom one Louisiana utility had extended service was permitted unilaterally to terminate that service in favor of another supplier. However, Riley Reed testified that the normal procedure of buying the customer from another utility usually occurred when a business or industrial customer, or a large block of residential customers, as opposed to an individual customer, was involved.
We find it significant that SLEMCO refused to serve the plaintiff until he obtained a release from the City. We find that SLEMCO’s conduct tends to establish that utilities recognize the possibility of contractual difficulty resulting from city customers attempting to unilaterally change utility companies.
The amount of time necessary for the City to recover its investment, the prevailing practice with similar contracts for furnishing electrical service to customers, and any other matters which might be relevant to determine the length of a customer’s service contract to enable the utility to furnish such service at the least possible cost are important considerations. The record reflects that the City was bound, under a bond indenture agreement, to protect the interests of the bondholders by seeing to it that the electrical system was meeting its debt service. A minimum of $500 was incurred by the City to install a transformer at plaintiff’s residence. Because of plaintiff’s increased needs, another higher voltage transformer and increased capacity wire were necessarily installed at a later date.
The City is bound to provide plaintiff the same right of termination it provides its other customers. That same right of termination should include the right to terminate electrical use in the event the plaintiff no longer requires service at the address where it is being supplied. However, no other customer is given the right to terminate in favor of another supplier. LeBlanc, supra. Therefore, plaintiff had no right to terminate utility service unless and until he no longer required electrical service at his residence.
We agree with and adopt the reasoning of the court in LeBlanc, supra.
For the foregoing reasons, the judgment of the trial court is hereby reversed and set aside. Plaintiff’s suit is dismissed with prejudice. All costs of this appeal and at the trial court level are assessed against plaintiff.
REVERSED AND RENDERED.
GUIDRY, J., concurs in the result.

. Riley Reed, Superintendent of the City’s electrical department, testified that the City was in the electricity business and, because of the economic value of each customer, he always recommended that the customer's request for a release be denied.